## CAMPBELL v. WILLIS.

(Court of Appeals of District of Columbia. Submitted February 16, 1923. Decided June 4, 1923.)

### No. 3888.

**1. Depositions** ⊛═89—**Testimony of witnesses they resided and did business more than 100 miles away authorizes admission.**

Where depositions de bene esse were taken in accordance with notice in the city of New York, which is more than 100 miles distant, and the witnesses there examined testified they were residents of New York and engaged in business there, it is presumed the witnesses continued to live in that city, so that the depositions are admissible without further proof of inability to procure their attendance at the place of trial; the burden of overcoming such presumption being on the objector to the use of the depositions.

**2. Appeal and error** ⊛═997(3)—**Court's findings on motion of both parties for directed verdict have force of verdict.**

Where both parties move for a directed verdict, the finding of the court on the facts involved in favor of plaintiff is equivalent to the verdict of a jury, and cannot be disturbed on appeal, unless there is no substantial evidence to sustain it.

**3. Evidence** ⊛═71, 72—**Presumed letters and telegrams forwarded in usual course of business were received.**

The law presumes that letters and telegrams addressed to defendant and forwarded in the usual course of business were received by him.

**4. Evidence** ⊛═55—**Presumed other party to telephone conversation was person whom he assumed to be.**

Where a person is connected by telephone wire with the place of business of one with whom he desires to speak, and is answered by one assuming to be such person, it is presumed that the one answering is the person he assumes to be.

**5. Evidence** ⊛═55—**Telegrams presumed to be sent by person whose name is signed thereto.**

The law presumes that a telegram is sent by the person whose name is signed to it.

**6. Evidence** ⊛═87—**Failure to deny sending of telegrams, receipt of letters, and telephone call warrants inference of transaction.**

Where plaintiff introduced a telegram purporting to be signed by defendant, and letters and telegrams sent by him to defendant and offered evidence of a telephone conversation with a person who assumed to be defendant, whereby plaintiff was authorized to purchase certain stock on behalf of defendant, and to resell the stock, defendant's failure to deny that he authorized the purchase, that he received the letters and telegrams sent by plaintiff, or that he sent the telegram received by plaintiff, warrants the belief that the purchase of the stock was authorized.

**7. Frauds, statute of** ⊛═84—**Statute does not apply to authorization of purchase of stock for another.**

The statute does not apply to an authorization to purchase corporate stock for another.

⊛═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. Frauds, statute of** ⊜➞139(6)—**Contract of sale of stock held executed, so that statute cannot be set up against it.**

Where plaintiff at defendant's request purchased and paid for stock for defendant, and later attempted to sell it at defendant's request, but was able to sell only a portion thereof, the balance proving worthless, the contract was executed, and the statute cannot be set up against it.

**9. Brokers** ⊜➞11—**Agent purchasing stock for principal need not tender it to recover amount paid.**

In an action for money paid by plaintiff for the balance of stock on behalf of defendant, which action was not based on the theory that plaintiff sold the stock to defendant, it was immaterial that plaintiff failed to keep his tender of the stock good.

**10. Judgment** ⊜➞250—**Declaration for goods sold does not prevent recovery on proper allegation of money paid supported by evidence.**

The fact that the declaration sought to recover for goods sold and delivered to defendant does not prevent recovery in indebitatus assumpsit, where it also alleged that plaintiff paid out money at defendant's request, which was supported by the evidence introduced.

Appeal from the Supreme Court of the District of Columbia.

Action by Harvey A. Willis, trading under the partnership name of Harvey A. Willis & Co. against Thomas R. J. Campbell, trading as T. R. J. Campbell & Co. Judgment for plaintiff, and defendant appeals. Affirmed.

Charles Poe, of Washington, D. C., for appellant.

Jesse C. Adkins and Frank F. Nesbit, both of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and BARBER, Judge of the United States Court of Customs Appeals.

SMYTH, Chief Justice. Harvey A. Willis, trading under the partnership name of Harvey A. Willis & Co., brought action in the Supreme Court of the District of Columbia against Thomas R. J. Campbell, trading as T. R. J. Campbell & Co., to recover an amount of money alleged to have been paid out and expended by Willis as the agent of Campbell, and at his request. There was a judgment for Willis, and Campbell appeals, assigning five errors. We shall consider them in the order in which they appear in the record.

[1] Depositions taken de bene esse by the plaintiff were offered and received in evidence over the objection of the defendant. The ground of the objection was that no showing had been made that the witnesses whose testimony was embodied in the depositions could not be produced in court, or that any effort had been made by the plaintiff to procure their attendance. Notice that depositions would be taken at a named place and time in the city of New York was duly served upon defendant. They were taken at that time and place. The witnesses testified that they were residents of the city of New York and engaged in business there. New York City is more than 100 miles from Washington. In such a case the law presumes that the witnesses continued to live in that city and were there at the time of the trial. Patapsco Insurance Co. v. Southgate, 5 Pet. 604, 8 L. Ed. 243; Texas &

⊜➞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

P. Ry. Co. v. Reagan, 118 Fed. 815, 55 C. C. A. 427; Whitford v. Clark County, 119 U. S. 522, 7 Sup. Ct. 306, 30 L. Ed. 500. The burden of overcoming this presumption was on the objector. See cases just cited. He made no attempt to discharge it, hence the depositions were properly received in evidence.

[2] The defendant offered no testimony. Each party moved for a directed verdict. The court overruled defendant's motion and sustained plaintiff's. The finding of the court upon the facts involved in favor of plaintiff is equivalent to the finding of a jury (Beuttell v. Magone, 157 U. S. 154, 157, 15 Sup. Ct. 566, 39 L. Ed. 654; Empire State Cattle Co. v. Atchison Ry. Co., 210 U. S. 1, 28 Sup. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70), and therefore cannot be disturbed by this court, unless there is no substantial evidence to sustain it (McDermott v. Severe, 202 U. S. 600, 26 Sup. Ct. 709, 50 L. Ed. 1162; Glaria v. Washington Southern Ry. Co., 30 App. D. C. 559; Baltimore & Ohio Railroad Co. v. Miller, 37 App. D. C. 218).

For several years prior to the transaction which forms the basis of this controversy, Willis and Campbell were engaged in the brokerage business, the one in New York and the other in Washington, and did considerable business with each other. When Willis purchased stock for Campbell, it was his custom to forward the certificates, with draft attached, to Campbell's bank in Washington, the certificates to be delivered to him when he took up the draft. On June 2, 1919, following a long telephone conversation between Willis' assistant manager and Campbell, Willis purchased 2,000 shares of unlisted stock and forwarded the certificates to Campbell's bank, in accordance with the custom just mentioned. On the same day he sent Campbell a telegram, notifying him of the purchase and the price paid. This was followed by a letter addressed to Campbell at his place of business, giving the transaction more in detail. On June 6 Willis received a telegram purporting to be signed by Campbell, directing him to sell at the market price the stock which he had purchased. Immediately after receiving this telegram, one of Willis' managers was, at his request, connected by telephone wire with Campbell's place of business in Washington, talked over the wire concerning the stock with a person representing himself as Campbell, and was told by this person to sell the stock as soon as possible for the best price obtainable. On June 7 Willis mailed to Campbell a letter confirming the telephone conversation, advising him that he had sold a part of the stock and giving the price received.

[3-6] The letters and telegrams addressed to Campbell were forwarded in the usual course of business. From this the law presumes they were received by him. Oregon Steamship Co. v. Otis, 100 N. Y. 446, 3 N. E. 485, 53 Am. Rep. 221; Perry v. German-American Bank, 53 Neb. 89, 73 N. W. 538, 68 Am. St. Rep. 593; Corry v. Sylvia y Cia, 192 Ala. 551, 68 South. 891, Ann. Cas. 1917E, 1052; Long-Bell Lumber Co. v. Nyman, 145 Mich. 477, 108 N. W. 1019, 116 Am. St. Rep. 310. Where a person, as here, is connected by telephone wire with the place of business of one with whom he desires to speak, and is answered by one assuming to be such person it will be presumed

that he is the person he assumes to be. Guest v. H. & St. J. R. R. Co., 77 Mo. App. 258. The Circuit Court of Appeals for the Seventh Circuit has ruled in Scofield v. Parlin & Orendorff Co., 61 Fed. 804, 10 C. C. A. 83, that where a letter is received in response to a letter sent by the receiver, the law will presume that the letter is from the person whose name is signed to it. We perceive no reason why the same principle should not apply in the case of a telegram. Western Union Telegraph Co. v. Troth, 43 Ind. App. 7, 14, 84 N. E. 727. Moreover, Campbell did not deny that he authorized the purchase of the stock, or that he received the letters and telegrams sent by Willis, or that he sent the telegram directing the sale of the stock, or that he had the conversations mentioned. In the nature of things, if he did not do any of these things, we believe he would have taken the witness stand and said so. Under all the circumstances, we are well convinced that he authorized the purchase of the stock, and later directed Willis to sell it.

[7, 8] The statute of frauds does not apply. There was no contract of sale between the plaintiff and the defendant. Willis was the agent of Campbell in making the purchase. At Campbell's request he bought the stock and paid for it. Campbell refused to reimburse him, but directed him to sell the stock at the best price he could get. He was able to sell some of it, and thus to recoup himself in part. The balance he could not sell. It proved to be worthless. On this point the testimony is uncontradicted. The suit is for the balance of the money which he expended. Decisions in point are Wiger v. Carr, 131 Wis. 584, 111 N. W. 657, 11 L. R. A. (N. S.) 650, 11 Ann. Cas. 998; McCarthy v. Weare Commission Co., 87 Minn. 11, 91 N. W. 33. In the latter case it was said plaintiffs neither bought the stocks of the defendant, nor sold them to it. The action is not to enforce an executory contract, but to recover the fruits of an executed contract, and falls within the well-settled rule that the statute of frauds cannot be set up against an executed contract. To the same effect, see Colt v. Clapp, 127 Mass. 476, and Bibb v. Allen, 149 U. S. 481, 13 Sup. Ct. 950, 37 L. Ed. 819. Campbell invites us to consider Hinchman v. Lincoln, 124 U. S. 38, 8 Sup. Ct. 369, 31 L. Ed. 337, and Hewes & Co. v. Jordan, 39 Md. 472, 17 Am. Rep. 578, as authorities in favor of his position; but we do not think that either is in point. In the Hinchman Case a contract for the sale of goods by the plaintiff to the defendant was involved, and in the Hewes Case a verbal agreement by defendant to purchase butter grease from the plaintiffs was the subject of the controversy. This action, for reasons already given, is not one like either of those.

[9, 10] While the defendant tendered the stock, there is no proof that he kept the tender good. But this is immaterial, because, as we have already pointed out, the action is not based on the theory that the stock was sold to Campbell. No tender was necessary. Nor does the fact that Willis says in his declaration that he seeks to recover for goods sold and delivered prevent a recovery in indebitatus assumpsit, for he also alleges therein that he paid out money at defendant's re-

quest. This is enough to support the evidence which he introduced. Copeland v. Young, 21 S. C. 275.

The record is free from error, and therefore we affirm the judgment, with costs.

Affirmed.